DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment by the Lucas County Court of Common Pleas, Juvenile Division, which terminated appellant-father Carl H.'s parental rights to Tyler S. and granted permanent custody to appellee, Lucas County Children Services Board ("LCCSB"). Because we find that the trial court erred in allowing appellant's counsel to withdraw her representation immediately prior to the dispositional hearing, we reverse.
 {¶ 2} Tyler S. was born in February 1994. When he came to the attention of LCCSB in September 2002, he was in the legal custody of his mother, but his mother had placed him in the possession of appellant's girlfriend, Amy B. Appellant, at this time, was incarcerated at the Corrections Center of Northwest Ohio, in Stryker, Ohio.
 {¶ 3} On September 9, 2002, appellee LCCSB filed a Complaint in Dependency/Neglect: Motion for Shelter Care on behalf of Tyler S. That day, the trial court conducted a shelter care hearing, and temporary custody of the child was awarded to appellee. Appellant, who was still incarcerated, did not attend the hearing. The matter was then set for the adjudication/disposition hearing.
 {¶ 4} On November 6, 2002, attorney Alexandria Vaneck was appointed to represent appellant.
 {¶ 5} On December 4, 2002, the matter proceeded to the adjudication/disposition hearing. Once again, appellant, who was still incarcerated, did not attend the hearing.
 {¶ 6} The conditions that brought Tyler to the attention of appellee, and which were admitted into evidence at the adjudication hearing, were as follows. On September 6, 2002, the Toledo Police responded to a call regarding two unsupervised children left outside the residence of Amy B. Upon arrival, the responding officers ascertained that the unsupervised children belonged to Amy B. After entering the residence, the officers and LCCSB caseworker Lynn Pinkelman observed Amy B.'s home to be unfit for habitation. Downstairs, piles of garbage were left in the kitchen, mounds of clothing were present in another room, the ceiling was caving in due to extensive water damage, dirty diapers were all over the residence, and no food was available. Upstairs, several of the windows were open with no screens, the mattresses were slashed, bed frames were broken, and animal feces were on the floor. Outside, a disabled vehicle was left in the yard with the windows down and a door off the hinges. Amy B's van had a missing back window. Upon observation, the caseworker found empty alcohol bottles strewn throughout the inside of the van. In addition, a car seat was fastened to a seat directly in front of the broken window. The caseworker also observed broken glass and a door with protruding nails on the lawn in the backyard. Approximately six car batteries leaking battery acid were found in the backyard and in the driveway. Amy B. was subsequently arrested for an outstanding traffic warrant, and the children were arrested for safekeeping.
 {¶ 7} The evidence further showed that Tyler, who was enrolled at Franklin Elementary, had attended only two days of school. He explained to LCCSB that his "mom," Amy B., told Tyler that he was sick and should not go to school. While home from school, Tyler supervised the other children in the residence.
 {¶ 8} Tyler's mother, despite having legal custody of him, had not had contact with him for some time. In 1997, Tyler had been adjudicated a dependent, neglected, and abused child, and had been removed from his home with his mother. In January 1998, custody was returned to her, and a "no contact" order was issued by the court between Tyler and appellant Carl H. In spite of the no contact order, Tyler had been residing primarily with appellant and Amy B.
 {¶ 9} At the end of the adjudication hearing, Tyler was adjudicated a dependent and neglected child, and temporary custody of Tyler was awarded to appellee. Case plan services were implemented to address the conditions which caused Tyler's removal from the home.
 {¶ 10} On February 6, 2003, appellee filed a Motion for Permanent Custody on behalf of Tyler, stating that his mother had not participated in case plan services, and that his father, appellant herein, was incarcerated and not due to be released for a couple of years.
 {¶ 11} On February 25, 2003, appellant's attorney, Alexandria Vaneck, was granted leave to withdraw as appellant's attorney. Attorney Cherrefe Kadri was appointed in her stead.
 {¶ 12} On March 26, 2003, the matter proceeded on the Motion for Permanent Custody. The matter was consolidated with another case, involving a sibling of Tyler, wherein appellee had filed an original complaint for permanent custody. (Appellant was not named as the father of the sibling, and thus was not a party to that part of the proceeding.) Tyler's mother entered into an agreement to terminate her parental rights as to both Tyler and his sibling. Upon inquiry of the mother, the trial court determined that her consent was made willingly and knowingly.
 {¶ 13} Following the mother's relinquishment of rights, the court turned its attention to addressing appellant's parental rights. It was at that point that appellant's attorney moved for a continuance. She stated that appellant was incarcerated in Lima Correctional Institution on probation violations for theft offenses from two different county courts, and that she understood the sentence on his revocation to be three years. In addition, she called attention to a letter in the court's file that was written by appellant and expressed his interest in obtaining custody of Tyler, or in the alternative, in having custody awarded to Amy B.[1] Finally, counsel for appellant stated that appellant had failed to respond to a letter she had sent him on March 10 asking him to correspond with her. According to attorney Kadri, the purpose of her letter was to find out "what was going on" with appellant in order to give her motion for continuance "some substance."
 {¶ 14} The trial court denied the motion for continuance. Kadri moved to withdraw, and the trial court granted the motion.
 {¶ 15} The matter proceeded on the disposition hearing, and LCCSB caseworker Susan Mills was called as a witness. Mills stated that at the time she began her involvement with Tyler's family in June 2002, she prepared a case plan. Copies of the plan were sent to appellant, but because he was incarcerated, the only plan for him at that time was to contact Mills to be assessed for services. Mills further testified that as long as appellant was incarcerated, he would be unavailable to receive services.
 {¶ 16} According to Mills, appellant contacted her only one time, by letter mailed from prison in November 2002. In that letter he expressed a desire to obtain custody of Tyler, together with the hope that he could get an early release. Mills stated that it was her understanding that appellant had to serve three years for each probation violation. She further stated that appellant had remained incarcerated throughout her involvement in the case.
 {¶ 17} Mills also testified that in 1997 Tyler had previously been removed from the custody of his parents due to physical abuse and had been placed in the temporary custody of appellee. Although appellant had been provided with case plan services during that case, including treatment for substance abuse and a recommendation for diagnostic assessment due to domestic violence, he failed to participate in those services. As a result, Tyler was returned to the legal custody of his mother, and a "no contact" order was issued as to appellant. Mills stated that the "no contact" order was still in place as of the date of the permanent custody hearing.
 {¶ 18} The caseworker and guardian ad litem present at the hearing recommended that it would be in Tyler's best interest if permanent custody were awarded to appellee.
 {¶ 19} At the end of the hearing, after testimony had concluded and exhibits were admitted (including appellant's criminal records), the trial court granted appellee's Motion for Permanent Custody. The court stated in its June 3, 2003 judgment entry, that it had found, by clear and convincing evidence, that pursuant to R.C. 2151.414(B)(1), and R.C.2151.414(E)(1), (13), and (16), Tyler could not and should not be placed with either parent within a reasonable period of time, and that pursuant to R.C. 2151.414(D) an award of permanent custody to appellee was in Tyler's best interest. In reaching this conclusion, the trial court pointed to appellant's continuing incarceration and extensive criminal history involving substance abuse, assault, domestic violence and theft offenses. The court stated that appellant's criminal activity and repeated incarcerations prevented him from providing care for Tyler. The court additionally found that appellant's continued incarcerations made him unavailable for services.
 {¶ 20} It is from this judgment that appellant appeals, setting forth the following assignments of error:
 {¶ 21} "I. The Court Erred in Allowing the Dispositional Hearing toContinue Without Counsel for Appellant-Father Present, in Violation ofhis Statutory Rights Pursuant to O.R.C. section 2151.352.
 {¶ 22} "II. The Court Erred in Allowing Counsel for Appellant-Fatherto Withdraw at the Dispositional Hearing, in Violation of Juvenile Rule7.2."
 {¶ 23} Appellant argues in his two assignments of error that the trial court erred in permitting the hearing to continue in the absence of his counsel and in permitting his counsel to withdraw at the dispositional hearing. He also argues that the trial court erred in denying the motion for continuance. As these arguments are all interrelated, this court will consolidate its response.
 {¶ 24} We begin this analysis with the understanding that "[t]he right to raise a child is an `essential' and `basic' civil right," and that a parent's interest in the care, custody and management of his or her child is "fundamental." In re Murray (1990), 52 Ohio St.3d 155, 157, quotingStanley v. Illinois (1972), 405 U.S. 645. The permanent termination of parental rights has been described as "the family law equivalent to the death penalty in a criminal case." In re Smith (1991), 77 Ohio App.3d 1,16. Thus, a parent "must be afforded every procedural and substantive protection that the law allows." Id. To this end, Ohio law confers even greater protection with respect to parental rights than is required under the United States Constitution. State, ex rel. Asberry v. Payne (1998),82 Ohio St.3d 44, 46.
 {¶ 25} R.C. 2151.352, Juv.R. 4, and L.C.J.C. Rule 7.2 together set forth and delineate a parent's due process right to counsel within the context of an Ohio termination of parental rights proceeding. R.C. 2151.352
relevantly provides that "[a] child, his parents, custodian, or other person in loco parentis of such child is entitled to representation by legal counsel at all stages of the proceedings and if, as an indigent person, he is unable to employ counsel, to have counsel provided to him pursuant to Chapter 120. of the Revised Code."
 {¶ 26} Juv.R. 4 similarly provides:
 {¶ 27} "(A) Assistance of counsel. Every party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights arise when a person becomes a party to a juvenile court proceeding.
 {¶ 28} "* * *
 {¶ 29} "(F) Withdrawal of counsel or guardian ad litem. An attorney or guardian ad litem may withdraw only with the consent of the court upon good cause shown."
 {¶ 30} L.C.J.C. Rule 7.2 expands upon Juv.R. 4(F) and states: "No attorney of record will be allowed to withdraw nor may he/she be discharged within fourteen (14) days of the trial date except for good cause shown and provided that such action is not the fault of the attorney and is not for the purpose of delay."
 {¶ 31} Thus, a parent's right to counsel in a termination of parental rights proceeding is both well-established and clear. It is not, however, absolute. In Ohio, a parent facing termination of parental rights can, under certain circumstances, be found to have waived the right to counsel, in which case a court may properly grant a request by counsel to withdraw. See In the matter of: Savanah M., 6th Dist. No. L-03-1112, 2003-Ohio-5855, at ¶ 33-34.
 {¶ 32} A court considering whether to grant an attorney's request to withdraw must use caution and, in the interest of safeguarding a parent's right to counsel and avoiding plain error, must undertake the following two-pronged inquiry: First, the court must ascertain that counsel's attempts to communicate with and obtain the cooperation of the client were reasonable; and second, the court must verify that the failure of this communication resulted in the inability of counsel to ascertain the client's wishes. In the matter of: Sadie R., 6th Dist. No. L-04-1057,2005-Ohio-325, at ¶ 35, 36; In the matter of: Savanah M., supra, Singer, J., concurring, at ¶ 45. Unless both prongs of this inquiry are satisfied, the motion to withdraw must be denied. See id.
 {¶ 33} Here, the trial court clearly failed to make the proper inquiry. First, the evidence was undisputed that appellant's counsel made only a single attempt to communicate with appellant, and that was by letter mailed less than three weeks prior to the permanent custody proceeding date for the purpose of finding out "what was going on" with appellant in order to give counsel's eleventh-hour motion for continuance "some substance." Whether this constituted a reasonable attempt to communicate with and obtain the cooperation of appellant is questionable at best. However, we need not engage in a lengthy discussion of this aspect of the inquiry, because it is with respect to the second part of the inquiry that the trial court indisputably committed plain error in this case.
 {¶ 34} Here, the trial court could not reasonably have concluded that the failure of counsel's communication resulted in the inability of counsel to ascertain the client's wishes. Counsel, herself, informed the court that it was appellant's desire to have custody of Tyler. Because the second prong of the two-pronged test established by this court was not satisfied in this case, appellant cannot be viewed as having waived his right to counsel. And because appellant did not waive his right to counsel, it was plain error for the trial court to grant appellant's counsel's leave to withdraw, and thereby deny appellant his right to representation at the dispositional hearing.
 {¶ 35} As stated by the Ohio Court of Appeals in the factually analogous case of In the matter of: M.L.R., 150 Ohio App.3d 39,2002-Ohio-5958, at ¶ 22: "Appellant had the right to counsel at all stages of the proceedings, and never waived that right. To allow counsel to withdraw from representation on the day of the dispositional hearing, in [the] client's absence, without prior motion or notice to [the] client, without a demonstration to the court that the client had rendered it unreasonably difficult for the attorney to represent him, and without appointing new counsel and/or continuing the hearing, and to require the client to proceed immediately without representation, was both erroneous and prejudicial." See id. at ¶ 11-14 (stating that the juvenile court plainly erred in allowing withdrawal in that case).
 {¶ 36} On consideration whereof, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is reversed and vacated as to the termination of appellant Carl H.'s parental rights. The prior temporary order with respect to appellant's rights is reinstated. This matter is remanded for further proceedings consistent with this decision and journal entry. Costs are assessed to appellee pursuant to App.R. 24.
Judgment reversed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Singer, P.J., Skow, J., Concur.
[1] Regarding the letter, the trial court stated, "Let the record show that I was not aware that there was a letter. I physically see the letter. I have not read the letter, and I do not intend to read it. It is file stamped February the 25th so apparently it's been in the file over in the building anyway since one month. * * * I have not read the content so I have no idea what the letter says."