[Cite as *In re G.F.*, 2014-Ohio-2580.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| G.F., et al. | : | CASE NO. CA2013-12-248 |
| | : | O P I N I O N<br>6/16/2014 |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2011-0224


Andrew M. Temin, Baden & Jones Bldg., 246 High Street, Hamilton, Ohio 45011, guardian ad litem for G.F., C.F. & T.F.

Richard Koehler II, 6 South Second Street, Suite 205, Hamilton, Ohio 45011, guardian ad litem for A.R.

Matthew N. Miller, 1400 Eaton Avenue, Hamilton, Ohio 45013, for appellant M.R. a.k.a. M.K.

Michael T. Gmoser, Butler County Prosecuting Attorney, Kimberly L. McManus, Government Services Center, 315 High Street, 11th Fl., Hamilton, Ohio 45011, for appellee, Butler County Children Services

Christina Minch, 7723 Tyler Place Blvd., #129, West Chester, Ohio 45069, for A.R.

Dawn S. Garrett, 9435 Waterstone Blvd., Suite 140, Cincinnati, Ohio 45249, for G.F., C.F. & T.F.

**RINGLAND, P.J.**

{¶ 1} Appellant, M.R., appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor children, A.R., G.F., C.F, and T.F., to appellee, Butler County Department of Job & Family Services ("BCDJFS").

{¶ 2} In May of 2011, Middletown police officers found G.F, C.F. and T.F. wandering alone outside at 11:00 p.m.[1] Thereafter, upon locating A.R. at appellant's home, she handed the officers a bag of marijuana which is inferred to have belonged to appellant.[2] Officers also discovered a pipe containing residue and Xanax pills lying in plain view. Appellant was subsequently convicted of endangering children. BCDJFS filed complaints on behalf of the children, after which they were removed from appellant's home and placed into foster care. All four children were adjudicated dependent by stipulation.

{¶ 3} BCDJFS prepared and filed four case plans to address the issues that resulted in the removal of the children, with reunification as the goal. Reunification was unsuccessful as appellant failed to consistently obtain mental health treatment, failed multiple drug tests, was unable or unwilling to obtain stable housing, lacked attention to T.F.'s serious medical needs, and failed to consistently attend visitation.

{¶ 4} On September 24, 2012, BCDJFS moved for permanent custody. After a series of hearings on the permanent custody motion, the magistrate determined that permanent custody of the children should be granted to BCDJFS. Appellant's objections to the decision were overruled by the juvenile court.

{¶ 5} Appellant appeals the juvenile court's decision, raising two assignments of error for our review.

---

1. The children were three, four and five years old at the time, respectively.

2. A.R. was eight years old at the time.

{¶ 6}   Assignment of Error No. 1:

{¶ 7}   THE TRIAL COURT ERRED IN AN ABUSE OF DISCRETION BY RULING AGAINST THE MANIFEST WEIGHT OF EVIDENCE.[3]

{¶ 8}   Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982).  An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination.  *In re Starkey*, 150 Ohio App.3d 612, 2002-Ohio-6892, ¶ 16 (7th Dist.).  A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented.  *In re Rodgers* (2000), 138 Ohio App.3d 510, 520 (12th Dist.).

{¶ 9}   Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test.  First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D).  Second, the court must find that any of the following apply: the child is abandoned; the child is orphaned; the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; or where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent.  R.C. 2151.414(B)(1)(a), (b), (c) and (d); *In re E.B.*, 12th Dist. Warren Nos. CA2009-10-139, CA2009-11-146, 2010-Ohio-1122, ¶ 22.

---

3. The attorneys for A.R., G.F., C.F. and T.F. also filed briefs essentially making the same arguments as those presented under appellant's first assignment of error.

{¶ 10} The juvenile court found by clear and convincing evidence, and appellant does not dispute, that the children have been in the temporary custody of the agency for more than 12 months of a consecutive 22-month period. However, appellant does dispute the juvenile court's finding that granting permanent custody of the children to the agency is in the children's best interest.

{¶ 11} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to the following:
>
> The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;
>
> The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 12} With respect to R.C. 2151.414 (D)(1)(a), the inter-relationship between T.F., C.F. and G.F. is quite positive with the children having bonded well to one another. However, the relationship between those children and A.R. has proven disconcerting. While there was testimony indicating that A.R. cares a great deal for her siblings, there was also testimony that A.R. was separated from her siblings due to her aggressive behaviors toward them. Because of that aggressiveness, combined with A.R.'s issues with personal boundaries and

inappropriate touching of her peers, A.R. was removed from the foster home she shared with her siblings. Despite that, the evidence indicates that all of the children look forward to visiting with one another and enjoy their time together.

{¶ 13} Appellant appears to have developed a bond with G.F., C.F. and T.F. Those children have consistently expressed a desire to be reunited with appellant. However, the children's behavior following their visits with appellant has been erratic. G.F., C.F. and T.F. have also bonded with their foster family. The foster mother has stated a willingness to adopt those children and facilitate contact between them and A.R. if permanent custody is granted to the agency.

{¶ 14} Appellant's relationship with A.R. has been more problematic. During the only unsupervised visit between A.R. and appellant, they came into contact with appellant's ex-boyfriend, whose son is alleged to have sexually abused A.R. This resulted in A.R. becoming "petrified," leaving her "scared and * * * shaking." Appellant was not permitted unsupervised visits after that incident. Other visits with appellant have proven to be highly charged, with A.R. lashing out towards appellant and appellant reacting emotionally. A.R. has bonded well with her foster family, though she has also engaged in aggressive behavior towards them, including threatening her foster mother with a knife. Testimony indicated that such an action is likely a result of her reactive attachment disorder and post-traumatic stress. Regardless, the foster mother has expressed a desire to adopt A.R. and facilitate contact between her and G.F., C.F. and T.F. if permanent custody is granted to the agency.

{¶ 15} Appellant has been notably inconsistent in her attempts to attend visitation with the children. As a result of those actions, the court ordered that appellant must confirm her attendance the morning of her scheduled visitations. Between February and May of 2013, appellant attended only three of the 11 possible visits with her children. The court ordered that visits be suspended entirely after appellant was discovered to have shown up intoxicated

for a visit on May 30, 2013.

{¶ 16} Finally, appellant's spouse testified that she has bonded with the children. However, testimony indicated that the children's behavior worsens around appellant's spouse because they do not listen to her.

{¶ 17} With respect to R.C. 2151.414 (D)(1)(b), the guardians ad litem ("GALs") for the children both recommended that permanent custody be awarded to the agency. No in camera interviews of G.F., C.F. or T.F. were conducted. An in camera interview of A.R. was conducted, and the court stated that it took the child's wishes and concerns into consideration in making its decision.

{¶ 18} With respect to R.C. 2151.414(D)(1)(c), the juvenile court found that the children have been in the temporary custody of the agency since July 16, 2011. The court found that the children have been in the agency's custody for more than 12 months of a consecutive 22-month period before the permanent custody motion was filed. By the start of the trial, the children had been in the temporary custody of the agency for approximately 20 months.

{¶ 19} In considering R.C. 2151.414 (D)(1)(d), the juvenile court found that there was a need for legally secure placement for the children based on the "testimony of the witnesses and exhibits presented at trial, the custodial history, and the prior entries herein."

{¶ 20} The children were initially removed from appellant's custody after they were found wandering outside at night and unsupervised. The eldest child was then found inside the home with drugs and paraphernalia in sight. Appellant was subsequently found guilty of child endangerment.

{¶ 21} Appellant was provided four case plans with the goal of reunifying her with the children. Appellant consistently failed to meet the goals outlined in the case plans. While appellant did receive positive reports from the Development of Living Skills program in which

she participated, those sessions were frequently held at Family Connections due to appellant's inability to consistently retain stable housing.

{¶ 22} In fact, appellant had moved seven times in the 17 months while the present case was ongoing. When she was able to obtain housing, it was often with family members with whom she had contentious relationships, resulting in police responses to those residences on multiple occasions. In two instances, appellant was evicted from her housing. In May of 2013, appellant moved into a four-bedroom residence with her wife. Testimony indicated that the home is not furnished to accommodate the children. Testimony also revealed that appellant and wife separated for a period shortly after moving into the house.

{¶ 23} Appellant also failed to consistently pass drug screenings. Appellant tested positive for marijuana multiple times. While she tested negative for marijuana during one seven-month period of her outpatient treatment, she once against tested positive just before she was scheduled to complete the treatment.

{¶ 24} Appellant participated in a psychological screening on September 2, 2011, wherein she was diagnosed with several disorders. Despite that, appellant attended only 15 of 29 appointments for counseling and 9 of 15 appointments for pharmacological management. Her drug screenings also indicated that she was not taking her medications as prescribed.

{¶ 25} As stated previously, appellant failed to consistently attend scheduled visits with the children. After arriving for one visitation intoxicated, visits were suspended entirely. Appellant's missed visits clearly upset the children. When she did attend the visitations, the testimony indicated that the children's behavior worsened, both at the time and for days afterwards.

{¶ 26} Finally, one of the children, T.F., has a serious medical condition involving her lungs that requires dedicated attention and treatment. T.F.'s condition requires daily

treatments through the use of medical equipment, frequent visits with a physician, and a smoke-free environment. Appellant has shown a disregard for T.F.'s medical condition. Despite caustic smells being hazardous to T.F.'s condition, appellant has continued to regularly smoke and smell of smoke at visitations. Testimony revealed that appellant would remove T.F.'s protective mask during visits. Appellant also frequently caused T.F. to miss appointments with her doctors. After moving into foster care, T.F.'s condition has improved significantly. She has been receiving the necessary daily treatments and is in a smoke-free environment. As a result, she has not required the emergency use of steroids that were often necessary while she lived with appellant, and her general health has improved.

{¶ 27} Three home studies were requested by relatives of the children, but none came to fruition. One was withdrawn, while the other two were denied.

{¶ 28} We agree with the juvenile court that based on appellant's own mental health issues and failure to consistently seek treatment, her inability to maintain stable housing, her failure in numerous drug screenings, her relationship with A.R. and apparent indifference to protect A.R. from future abuse, and her disregard for T.F.'s medical condition, she is unable to provide a legally secure permanent placement. Conversely, the foster families, having bonded with the children and expressed a willingness to adopt them and facilitate contact between the children, will provide legally secure permanent placement for the children.

{¶ 29} In considering R.C. 2151.414 (D)(1)(e), the juvenile court found that appellant was convicted of child endangerment under R.C. 2919.22(A).

{¶ 30} Finally, appellant argues that the agency failed to make a reasonable effort towards a timely reunification with her children. In determining whether the agency made reasonable efforts to prevent the removal of the child from the home, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. *In re K. M.*, 12th Dist. Butler No. CA2004-02-052, 2004-Ohio-

4152, ¶ 23. "Reasonable efforts" does not mean all available efforts. Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible. *Id.*

{¶ 31} Appellant argues that any and all subsequent problems she encountered would not have occurred but for the agency's failure to reunify her with her children sooner. Notably she alleges that, (1) the unsupervised visit where she and A.R. came into contact with the father of A.R.'s alleged sexual abuser would not have occurred, (2) she would not have failed a drug test because she would not have had time to associate with persons using marijuana if she were caring for her children, (3) she would have avoided eviction because she would have been required to work harder to support her children. This court is unpersuaded by such excuses or explanations for appellant's failures and cannot find that those events are in any way the result of the agency's actions. The examples of problems that appellant alleges would not have occurred if she had been reunified with the children provide exactly the reasoning why it was proper that reunification did not occur.

{¶ 32} In light of the foregoing, having found that the juvenile court's decision was in the best interests of the children and supported by the manifest weight of the evidence, appellant's first assignment of error is overruled.

{¶ 33} Assignment of Error No. 2:

{¶ 34} THE TRIAL COURT ERRED IN GRANTING WITHDRAW OF ATTORNEY FOR APPELLEE [M.R.] AND A GRANTING OF A SPLIT GAL ROLES SO CLOSE IN TIME TO THE PERMANENT CUSTODY HEARINGS WITHOUT CONTINUING SAID HEARINGS.

{¶ 35} Within this assignment of error, appellant argues that she was "prejudiced by the changing of her attorney, and the splitting roles of the GALs a few weeks before the permanent custody trial dates in February 2013." She also argues that GAL Andrew Temin was not "adequately prepared to represent the children's wishes during the February 2013

trials and thereafter."

*Appellant's Counsel*

{¶ 36} We have long recognized that "Juv.R. 4 and R.C. 2151.352 clearly provide parents who are parties to juvenile proceedings with the right to be represented by counsel at all stages of juvenile proceedings." *Burton v. Caudill*, 12th Dist. Brown No. CA2009-12-047, 2010-Ohio-4946, ¶ 32; *In re Lander*, 12th Dist. Butler No. CA99-05-096, 2000 WL 819775, * 2 (June 26, 2000). Once appointed, an attorney "may withdraw only with the consent of the court upon good cause shown." Juv.R. 4(F).

{¶ 37} To determine whether there is good cause for the withdrawal of an attorney's representation, the "attorney seeking to withdraw must appear before the juvenile court and demonstrate that representation of the party's interest has become impossible because of an inability to ascertain the party's wishes or to obtain cooperation." *In re Walling*, 1st Dist. Hamilton No. C-040745, 2005-Ohio-1558, ¶ 12. *See also In re Tyler S.*, 6th Dist. Lucas No. L-04-1294, 2005-Ohio-1225, ¶ 32. "A party's lack of cooperation or failure to communicate with counsel may be good cause for withdrawal." *In re Walling* at ¶ 12. However, before the court can determine whether the party's alleged uncooperativeness has made it unreasonably difficult for counsel to represent his client effectively, the court must inquire into the source of the uncooperativeness. *In re M.L.R.*, 150 Ohio App.3d 39, 2002-Ohio-5958, ¶ 16 (8th Dist.).

{¶ 38} On January 8, 2013, appellant's court-appointed attorney filed a motion to withdraw as counsel, citing "irreconcilable differences" that rendered her "no longer able to effectively and adequately provide representation." The juvenile court granted the motion on January 9, 2013. On January 10, 2013, Amy Ashcroft was appointed counsel for appellant, 32 days prior to the commencement of the permanent custody hearings.

{¶ 39} Appellant makes a generalized, blanket assertion that the granting of her

- 10 -

previous counsel's motion to withdraw and subsequent appointment of Ashcroft as her attorney, "must have prejudiced [her] to some degree." However, appellant cites to no specific instances, nor has this court discovered any, wherein she was prejudiced by those actions. After granting the motion to withdraw, the trial court quickly appointed new counsel for appellant, and subsequently delayed the January 31, 2013 pretrial hearing to accommodate the new counsel.

{¶ 40} After a thorough review of the record, we find no indication that appellant was prejudiced by the appointment of Ashcroft a month prior to the commencement of the trial. Ashcroft proficiently replied to motions, demanded discovery, and successfully examined and cross-examined witnesses to the benefit of appellant. Beyond appellant's mere speculation, we find no prejudice.

### Guardians Ad Litem

{¶ 41} Appellant argues that she was prejudiced by the splitting of the GAL and attorney roles for G.F., C.F. and T.F. Dawn Garrett had been acting as both the attorney and GAL for those children prior to the splitting of the roles. After the split, she continued as those children's attorney, while Andrew Temin was appointed their GAL.

{¶ 42} As this court has previously noted, a juvenile who is the subject of a permanent custody proceeding is a party to the proceeding and therefore entitled to counsel. *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500. In some situations, a guardian ad litem can serve a dual role as both GAL and attorney for the child. *See id.* at paragraph 18. However, the roles of GAL and attorney are not always compatible as they serve different functions. *In re Baby Girl Baxter*, 17 Ohio St.3d 229, 232 (1985). The role of a GAL is to investigate the child's situation and then ask the court to do what is in the child's best interest, while the role of an attorney is to zealously represent his client within the bounds of the law. *Id.* Generally, the appointment of independent counsel is necessary when the child has "repeatedly

- 11 -

expressed a strong desire that differs and is otherwise inconsistent with the guardian ad litem's recommendations." *In re B.K.*, 12th Dist. Butler App. No. CA2010-12-324, 2011-Ohio-4470, ¶ 19.

{¶ 43} In the present case, Garrett's recommendations conflicted with the children's newly stated preference to return to appellant. Accordingly, Garrett could no longer zealously advocate for the children's wishes when she disagreed as to what was in their best interests in her role as their GAL.

{¶ 44} Appellant also argues that Temin, the new GAL, was not adequately prepared to represent the children's best interests.[4] Here again, appellant's contentions of prejudice are purely speculative. She argues that the Temin couldn't reasonably be expected to properly stipulate to necessary evidence, yet cites to no specific examples where evidence was or was not stipulated to that resulted in prejudice.

{¶ 45} She further asserts that Temin failed to properly cross-examine witnesses, alleging a bias against appellant. While we agree that Temin elicited significant negative testimony with regard to appellant, we disagree that such an effort amounted to error. If we were to find that the elicitation of a greater abundance of negative testimony rather than positive amounted to error, we would reduce the role of a GAL to nothing more than an advocate for the parent's wishes. Furthermore, it would have been redundant for Temin to ask questions on cross-examination that were intended to generate positive responses when those same questions and responses were already brought out by appellant's counsel on direct examination.

{¶ 46} Finally, appellant argues she was prejudiced when Temin filed a motion

---

4. Appellant's brief questions whether Temin was "adequately prepared to represent the children's wishes." As a GAL does not represent the children's wishes, but rather their best interests, we presume that was appellant's intended argument.

seeking an order to suspend appellant's visits with the children altogether after Temin had been acting as their GAL for less than two months. However, a review of the record reveals that Temin first sought and was granted an order requiring appellant to confirm her visits by 10:00 a.m. on the visitation day because she had frequently failed to appear for the visits, causing the children to become extremely upset. Subsequently, appellant consistently failed to appear for the visits or call ahead of time as required by the court order. Temin only sought the order seeking to suspend appellant's visits after appellant arrived for a visitation on May 30, 2013 in a clearly intoxicated state, resulting in the cancellation of the visit. Accordingly, we find that Temin's actions in those instances were in support of the children's best interests.

{¶ 47} In light of the foregoing, having found that (1) appellant provided no evidence that she was prejudiced by the appointment of new counsel one month prior to the start of trial, (2) the trial court properly split the roles of attorney and GAL for the children where the wishes of the children and the best interest recommendation of the GAL conflicted, and (3) Temin adequately represented the children's best interests, appellant's second assignment of error is overruled.

{¶ 48} Accordingly, we find no error in the juvenile court's determination that it was in the children's best interest to grant permanent custody to the agency and that the juvenile court's decision was supported by the evidence.

{¶ 49} Judgment affirmed.

HENDRICKSON and PIPER, JJ., concur.