[Cite as *In re H.D.*, 2017-Ohio-1333.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

IN THE MATTER OF: H.D.                :

                                    CASE NO.  CA2016-11-098

                             :

                                      O P I N I O N

                           :               4/10/2017

                             :

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 14-D000069

David P. Fornshell, Warren County Prosecuting Attorney, 520 Justice Drive, Lebanon, Ohio 45036, for Warren County Children's Services

John C. Kaspar, 130 East Mulberry Street, Lebanon, Ohio 45036, Guardian Ad Litem

Kim Schneider, 8080 Beckett Center Drive, Suite 112, West Chester, Ohio 45069, for H.D.

Maxwell D. Kinman, 423 Reading Road, Mason, Ohio 45040, for R.G.-M.

**S. POWELL, P.J.**

{¶ 1}   Appellant, R.G.-M., the biological mother ("Mother") of H.D., appeals from the decision of the Warren County Court of Common Pleas, Juvenile Division, granting permanent custody of H.D. to appellee, Warren County Children's Services ("WCCS").  For the reasons outlined below, we affirm.

{¶ 2}   The child at issue, H.D., was born on December 25, 2014.  At the time of her

birth, H.D. tested positive for opiates, hydrocodone, and tramadol.  After giving birth, Mother also tested positive for cocaine and admittedly consumed alcohol before going to the hospital to visit H.D. on December 29, 2014.  H.D. was subsequently placed in the temporary custody of WCCS on December 31, 2014.  Several months later, on March 4, 2015, H.D. was adjudicated an abused and dependent child.  Mother did not dispute this finding.

{¶ 3}  Over a year later, on June 29, 2016, WCCS filed for permanent custody of H.D. The juvenile court held a hearing on WCCS' motion on October 5, 2016.  At this hearing, Mother admitted that she was a drug addict who suffered from substance abuse and mental health issues.  Following this hearing, on October 11, 2016, the juvenile court granted WCCS permanent custody of H.D.

{¶ 4}  Mother now appeals from the juvenile court's decision to grant permanent custody of H.D. to WCCS, raising two assignments of error for review.

{¶ 5}  Assignment of Error No. 1:

{¶ 6}  THE TRIAL COURT ERRED BY ALLOWING THE STATE OF OHIO TO PRESENT HEARSAY EVIDENCE OVER THE APPELLANT'S OBJECTION.

{¶ 7}  In her first assignment of error, Mother argues the trial court erred by admitting alleged hearsay statements regarding the events leading up to H.D.'s placement in foster care and the results of Mother's drug screens.  Mother also argues the trial court erred by allowing the WCCS supervisor overseeing her case to testify instead of requiring testimony from the actual caseworker assigned to her case.  According to Mother, this constitutes blatant hearsay that prejudiced her and prohibited her from receiving a fair hearing.  We disagree.

{¶ 8}  Hearsay is inadmissible in hearings on motions for permanent custody.  *In re W.R.*, 12th Dist. Fayette No. CA2011-08-016, 2012-Ohio-382, ¶ 22.  However, it is well-established that as the fact-finder, a juvenile court is presumed to have considered only

- 2 -

properly admissible evidence unless the record affirmatively demonstrates otherwise. *In re A.F.*, 12th Dist. Butler No. CA2011-12-233, 2012-Ohio-2958, ¶ 33. Therefore, the admission of hearsay evidence in permanent custody cases, even if error, is not considered prejudicial unless it is shown that the juvenile court relied on this improper evidence in making its decision. *In re K.B.*, 12th Dist. Butler Nos. CA2014-02-042 thru CA2014-02-044, 2014-Ohio-3654, ¶ 83.

{¶ 9} After a thorough review of the record, we find many of the alleged hearsay statements Mother complains of do not fall within the rule against hearsay as provided by Evid.R. 802, but instead constitute either nonhearsay statements as defined by Evid.R. 801 or constitute one of the many exceptions to the rule against hearsay as provided by Evid.R. 803. Again, as the trier of fact, the juvenile court is presumed to be able to disregard improper testimony. Regardless, even if the challenged testimony could be considered inadmissible hearsay, Mother cannot show that she suffered any resulting prejudice resulting from its admission. This is particularly true here considering Mother herself testified regarding most, if not all, of the alleged improper statements when called to testify before the juvenile court.

{¶ 10} For instance, although there was testimony that Mother submitted several positive drug screens, Mother herself testified that she tested positive for cocaine, nevertheless maintaining that the result was a false positive, and that she continues to struggle with substance abuse and mental health issues. Mother, a self-proclaimed drug addict, also acknowledged that she had consumed alcohol prior to visiting H.D. in the hospital shortly after the child's birth. Mother further admitted to abusing her prescribed Ritalin and Fen-Phen. In addition, Mother acknowledged that she had been charged with several offenses since H.D. was removed from her care, as well as an incident where the SWAT team was called to her house after she barricaded herself inside, actions that resulted in

Mother being placed on a 72-hour hold in a mental health facility. Therefore, even assuming the complained of testimony was inadmissible hearsay improperly admitted by the juvenile court, because the challenged testimony did not subject Mother to any resulting prejudice, the admission of such evidence constituted, at worst, harmless error. Accordingly, Mother's first assignment of error is overruled.

{¶ 11} Assignment of Error No. 2:

{¶ 12} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILD AS SAID FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 13} In her second assignment of error, Mother argues the juvenile court's decision granting permanent custody of H.D. to WCCS was not in the child's best interest and was otherwise against the manifest weight of the evidence. We again disagree.

{¶ 14} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *In re K.W.*, 12th Dist. Butler No. CA2015-06-124, 2015-Ohio-4315, ¶ 11, citing *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). As a result, an appellate court's review of a juvenile court's decision granting permanent custody is generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. In turn, this court will reverse a juvenile court's decision only if there is a sufficient conflict in the evidence presented. *In re K.A.*, 12th Dist. Butler No. CA2016-07-140, 2016-Ohio-7911, ¶ 10. However, even if the juvenile court's decision is supported by sufficient evidence, "an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *In re T.P.*, 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶ 19.

- 4 -

{¶ 15} In determining whether a lower court's decision is against the manifest weight of the evidence, an appellate court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. The presumption in weighing the evidence is in favor of the finder of fact, which we are especially mindful of in custody cases. *In re C.Y.*, 12th Dist. Butler Nos. CA2014-11-231 and CA2014-11-236 thru CA2014-11-238, 2015-Ohio-1343, ¶ 25. Therefore, "[i]f the evidence is susceptible to more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Eastley* at ¶ 21.

{¶ 16} Pursuant to R.C. 2151.414(B)(1), the juvenile court may terminate parental rights and award permanent custody of a child to a children services agency if the court makes findings pursuant to a two-part test. *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. First, the juvenile court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. Second, the juvenile court must find that any of the following apply: (1) the child is abandoned; (2) the child is orphaned; (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. Only one of these findings must be

met for the second prong of the permanent custody test to be satisfied. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

{¶ 17} In this case, the juvenile court found H.D. had been abandoned and that the child had been in the temporary custody of WCCS for more than 12 months of a consecutive 22-month period as of the date WCCS filed for permanent custody. Mother does not dispute these findings, both of which are supported by the record. Rather, as noted above, Mother merely challenges the juvenile court's finding that granting permanent custody of H.D. to WCCS was in the child's best interest and claims that decision was against the manifest weight of the evidence.

{¶ 18} When considering the best interest of a child in a permanent custody hearing, the juvenile court is required under R.C. 2151.414(D)(1) to consider all relevant factors, including, but not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-town providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secured permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors listed in R.C. 2151.414(E)(7) to (11) apply in relation to the parents and child.

{¶ 19} With respect to H.D.'s interactions and interrelationships, the juvenile court found that since being placed in foster care at six days old, H.D. has adjusted to her foster home and to her foster family. The juvenile court further found that H.D. was bonded to her foster family just as her foster family was bonded to her. The juvenile court also noted that H.D.'s foster family indicated its interest in adopting H.D. should permanent custody be granted to WCCS. As the juvenile court stated, "[H.D.] knows no other life other than the life

- 6 -

provided to her by her foster family." The record indicates H.D. referred to her foster parents as "Dada" and "Momma."

{¶ 20} Next, in regards to H.D.'s wishes, the juvenile court noted that H.D. was too young to articulate her wishes. However, both H.D.'s attorney and guardian ad litem support granting permanent custody of the child to WCCS.

{¶ 21} Regarding H.D.'s custodial history, the juvenile court found H.D. had been in the temporary custody of WCCS since December 30, 2014, well over 12 months of a consecutive 22-month period as of the date WCCS filed for permanent custody.

{¶ 22} In addition, with regard to H.D.'s need for a legally secured permanent placement, the juvenile court found Mother continues to struggle with substance abuse and mental health issues, thus making it impossible for her to properly care for H.D. Specifically, as the juvenile court stated, "Mother has struggled with substance abuse since the case began, and as recently as last month, has been abusing her prescribed medication."

{¶ 23} Finally, with respect to any of the factors contained in R.C. 2151.414(E)(7) to (11), the juvenile court reiterated its finding that Mother had abandoned H.D., a decision Mother does not dispute, thereby supporting a decision to grant permanent custody of the child to WCCS.

{¶ 24} Despite these findings, Mother argues the juvenile court erred by granting permanent custody of H.D. to WCCS since it failed to consider several factors in her favor; namely, that she had stable housing, that she had successfully completed the entirety of her case plan services, parenting classes, and assessments for both her substance abuse and mental health issues, and that she had been taking her prescribed medication and complying with her recommended mental health treatment. However, while we agree that these factors could be favorable to Mother, just as the juvenile court found, the record does not support many of Mother's claims.

{¶ 25} For example, while Mother claims to have been taking her prescribed medication as instructed, the juvenile court found Mother, a self-proclaimed drug addict, had actually been abusing her prescribed Ritalin and Fen-Phen, a fact Mother specifically admitted to when testifying at the permanent custody hearing. In addition, while Mother claims she successfully completed the entirety of her case plan services, the record indicates Mother completed only a portion of those required services, none of which substantially remedied the concerns that caused H.D.'s removal from Mother's custody, i.e., her substance abuse and mental health issues. Similarly, while Mother claims she has had stable housing, the record indicates that since giving birth to H.D., Mother has moved several times, been evicted, lived in an abuse shelter, was homeless, and spent time in jail. Although there was testimony to the contrary, we find this hardly constitutes stable housing.

{¶ 26} Regardless, even assuming Mother's claims were true, none of these factors are dispositive of the juvenile court's ultimate decision as to what was in H.D.'s best interest. As this court has stated previously, "[n]o one factor is to be given greater weight or heightened significance in the juvenile court's analysis." *In re J.H.*, 12th Dist. Clinton Nos. CA2015-07-014 and CA2015-07-015, 2016-Ohio-640, ¶ 41, citing *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56. Moreover, while it is certainly a relevant factor to consider whether Mother completed her case plan services, "the case plan is 'simply a means to a goal, but not the goal itself.'" *In re E.B.*, 12th Dist. Warren No. CA2009-10-139, 2010-Ohio-1122, ¶ 30, quoting *In re C.C.*, 8th Dist. Cuyahoga Nos. 94013 and 94014, 2010-Ohio-780, ¶ 25. In other words, "the key concern is not whether the parent has successfully completed the case plan, but whether the parent has *substantially remedied* the concerns that caused the child's removal from the parent's custody." (Emphasis sic.) *In re S.M.*, 12th Dist. Clermont No. CA2015-01-003, 2015-Ohio-2318, ¶ 24. Therefore, while Mother suggests otherwise, when the focus is on H.D.'s best interest, other considerations justify an award of

permanent custody to WCCS.

{¶ 27} In light of the foregoing, and after a thorough review of the record, we find the juvenile court's decision to grant permanent custody of H.D. to WCCS was supported by sufficient, credible evidence and was otherwise not against the manifest weight of the evidence. Again, as the record reveals, and just as the juvenile court found, Mother, a self-proclaimed drug addict, continues to struggle with substance abuse and mental health issues that make it impossible for her to properly care for H.D. The record also reveals that Mother has been charged with several offenses during the pendency of this matter and had recently been involved in an incident where the SWAT team was called to her house after she barricaded herself inside, actions that resulted in her being placed on a 72-hour hold in a mental health facility. It is also undisputed that Mother, who reportedly referred to herself as a paranoid schizophrenic who was not taking her medication, had not had any contact with H.D. for several months after her visitation was suspended when she failed to appear for her scheduled drug screens. A child's best interest cannot be met under these uncertain circumstances. Therefore, because we find no error in the juvenile court's decision finding it was in H.D.'s best interest to grant permanent custody of the child to WCCS, Mother's second assignment of error is overruled.

{¶ 28} Judgment affirmed.

RINGLAND and PIPER, JJ., concur.