[Cite as *In re C.D.*, 2019-Ohio-4911.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : |  |
| C.D. | : | CASE NO. CA2019-02-014 |
|  | : | O P I N I O N<br>12/2/2019 |
|  | : |  |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No.  2017 JC 4950

D. Vincent Faris, Clermont County Prosecuting Attorney, Nick Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellee

Alexander, Wagner & Kinman, Jesse D. Bowman, 423 Reading Road, Mason, Ohio 45040, for appellant

**PIPER, J.**

{¶ 1}   Appellant, T.W. ("Mother"), appeals a decision of the Clermont County Court of Common Pleas, Juvenile Division, granting permanent custody of her child, C.D., to Clermont County Department of Job and Family Services, Children Services Division ("the Agency").

{¶ 2}   Mother has a history of drug addiction that rendered her unable to care for C.D., who was 16 years old at the time of the proceedings.  Given Mother's inability to care for C.D., he often lived with his aunt.  The child had a history of his own drug usage, as well as

delinquency contacts including theft, violation of court orders, disorderly conduct, and attempted breaking and entering and vandalism. When C.D.'s aunt could no longer care for him, the child's Guardian Ad Litem ("GAL") filed a complaint in March 2017 alleging that C.D. was a dependent child. The juvenile court granted temporary custody of the child to the Agency.

{¶ 3}   During an adjudication hearing, Mother admitted to the allegations in the complaint that she, C.D.'s aunt, and C.D.'s father were unable to care for the child.[1] The juvenile court thus ruled that C.D. was dependent and ordered at disposition that the child remain in the temporary custody of the Agency. In May 2018, the Agency filed a motion for permanent custody.

{¶ 4}   Throughout the pendency of the proceedings, C.D. lived in a therapeutic foster home, a detention center, a youth academy, and Buckeye Ranch, which provides emotional, behavioral, and mental health services for children. After running away from his therapeutic foster home, C.D. was apprehended and placed in detention. He later transferred to the Marsh Foundation, which provides intensive treatment services to address a variety of behavioral and emotional issues.

{¶ 5}   During this time, Mother was provided a case plan that included parental education, substance abuse treatment, resource management, and household maintenance. However, she did not complete the case plan items, and did not have visitation with the child through the Agency.

{¶ 6}   The magistrate ordered a hearing on the Agency's permanent custody motion, which Mother did not attend. At the hearing, Mother's counsel moved for a continuance, but could not explain why Mother was not present. The juvenile court denied the motion for a

---

1. Father did not file a brief with this court.

continuance and the hearing occurred as planned. Mother later explained that she overslept and was thus absent from the proceeding. Although the court did not grant her counsel's request for a continuance, the court allowed Mother to later present her testimony, as well as testimony from the child and the child's father.

{¶ 7} The magistrate granted the Agency's motion for permanent custody. While Mother filed objections to the magistrate's permanent custody decision, she did not object to the magistrate's decision denying a continuance. The juvenile court overruled Mother's objection and affirmed the grant of permanent custody to the Agency. Mother now appeals the juvenile court's decision, raising the following assignments of error.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILD BECAUSE THIS FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 10} Mother argues that the juvenile court erred by granting permanent custody of her child to the Agency because such was not in the child's best interest.

{¶ 11} Before a natural parent's constitutionally protected liberty interest in the care and custody of his or her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *In re K.W.*, 12th Dist. Butler No. CA2015-06-124, 2015-Ohio-4315, ¶ 11. An appellate court's review of a juvenile court's decision granting permanent custody is generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. This court will not reverse a juvenile court's decision to grant permanent custody unless there is a sufficient conflict in the evidence presented. *In re K.A.*, 12th Dist.

Butler No. CA2016-07-140, 2016-Ohio-7911, ¶ 10.

{¶ 12} Even if the juvenile court's decision is supported by sufficient evidence, "an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *In re T.P.*, 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶ 19. When determining whether a juvenile court's decision is against the manifest weight of the evidence in a permanent custody case, an appellate court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.

{¶ 13} The presumption in weighing the evidence is in favor of the finder of fact, which we are especially mindful of in custody cases. *In re C.Y.*, 12th Dist. Butler Nos. CA2014-11-231 and CA2014-11-236 thru CA2014-11-238, 2015-Ohio-1343, ¶ 25. Therefore, "[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Eastley* at ¶ 21.

{¶ 14} Pursuant to R.C. 2151.414(B)(1), the juvenile court may terminate parental rights and award permanent custody of a child to a children services agency if the court makes findings pursuant to a two-part test. *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. First, the juvenile court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. Among others, these factors include the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other

person who may significantly affect the child, the wishes of the child, the custodial history of the child, and the child's need for a legally secure permanent placement.

{¶ 15} Second, pursuant to R.C. 2151.414(B)(1)(a) thru (e), the juvenile court must find that one of five circumstances apply to the child, such as that the child has been abandoned, orphaned, or been in an agency's temporary custody for 12 months of a consecutive 22-month period. *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. Only one of these findings must be met to satisfy the second prong of the two-part permanent custody test. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.[2]

{¶ 16} After reviewing the record, we find that the juvenile court's decision to grant permanent custody of C.D. to the Agency was not against the manifest weight of the evidence and that there is clear and convincing evidence that granting permanent custody is in the best interest of the child.

{¶ 17} Regarding the relationship between C.D. and his parents, the record indicates a history of instability, with neither parent maintaining a consistent presence in the child's life due to drug addiction and criminal activity. Father testified that he had an addiction to heroin, spent time in prison for grand theft, and lived under a bridge at some point. He admitted that the last time he saw C.D. was in 2015.

{¶ 18} Mother testified that she was on community control for possessing heroin, and that she had violated the terms of her community control six or seven times. Mother admitted she was addicted to heroin, but claimed sobriety for two years as of the time of the hearing. However, and despite her claimed sobriety, Mother never initiated visitation with her son through the Agency. Instead, Mother admitted that she would have contact with the child

---

2. Mother does not contest that C.D. has been in the custody of the agency for at least 12 months out of a consecutive 22-month period.

when he would run away from his placements, despite there being a no-contact order in place.[3] She also would not inform the Agency of C.D.'s whereabouts during the time he was on the run. Mother also testified that despite her sobriety, she had inappropriate conversations with C.D., including text messages commenting on the size of C.D.'s penis and C.D. whipping his girlfriend during a sexual encounter.

{¶ 19} Regarding the child's wishes, C.D.'s GAL testified that the child wanted to reunify with Mother, but also understood the unlikelihood of that occurring. The child told his GAL that he wanted to be placed in a foster care home closer to his biological family, and the GAL ultimately recommended that the Agency have permanent custody.

{¶ 20} Regarding the child's custodial history, and as noted above, the child had been living with his aunt before the Agency became involved due to Mother's inability to care for C.D. The record indicates that Mother, who had a perpetual substance abuse problem, was instructed through her case plan to go through a substance abuse assessment before receiving treatment for her addiction. However, Mother did not complete the required assessment. Nor did Mother keep in contact with her caseworker, who testified that she and Mother had no contact from September 25, 2017 through May 30, 2018.

{¶ 21} Regarding the child's need for a legally secure permanent placement, Mother testified that she was working as a waitress and lived in a home with her fiancé that had room for C.D. However, given that Mother lives with her fiancé, she cannot guarantee the stability of her housing or her situation should Mother separate from her fiancé.

{¶ 22} The caseworker testified that C.D. had been diagnosed with several medical and psychological issues, as well as drug usage, and had been placed in several different living situations such as therapeutic foster homes, youth academies, and detention centers.

---

3. The record does not contain information regarding the no-contact order, other than it was executed prior to the Agency gaining temporary custody, and that it remained in place during the proceedings.

C.D. had tested positive for THC, methamphetamine, and oxycodone, and was placed at a foundation to help him with substance abuse treatment, mental health treatment, and independent living skills. Mother admitted that C.D. had issues with substance abuse, and that he needed treatment. However, Mother failed to pay child support for C.D. and the record does not indicate that Mother would pay for any such treatment C.D. would require.

{¶ 23} While Mother may have been making strides regarding her drug addiction and ability to care for herself and C.D., the record demonstrates that she is not capable of consistently providing C.D. with a healthy environment. Despite Mother's claims regarding sobriety, the juvenile court questioned Mother's credibility and noted that she disappeared for nine months after completing a drug rehabilitation program. Moreover, Mother has failed to follow up with the necessary drug assessment, take parenting classes, or adhere to the terms of her community control. Nor did Mother obey the no-contact order, and she further refused contact with the Agency through her caseworker.

{¶ 24} Conversely, the Agency has the necessary resources to provide behavioral and health services to the child. The juvenile court specifically noted that these services are "essential to C.D.'s ability to mature and maximize his potential as an adult." The balancing of these factors indicate that granting permanent custody of the child to the Agency is in C.D.'s best interest, especially when considering the child's need for ongoing medical and mental health services, substance abuse treatment, and services to help him transition into adulthood.

{¶ 25} After reviewing the record, we find the juvenile court's decision was supported by clear and convincing evidence and that such decision was not against the manifest weight of the evidence. As such, Mother's first assignment of error is overruled.

{¶ 26} Assignment of Error No. 2:

{¶ 27} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY DENYING APPELLANT'S REQUEST FOR A CONTINUANCE BECAUSE THIS RULING WAS UNREASONABLE AND ARBITRARY.

{¶ 28} Mother argues in her second assignment of error that the juvenile court erred by not granting her request for a continuance.

{¶ 29} The juvenile rules require written objections to a magistrate's decision. Juv.R. 40(D)(3)(b)(i). "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding as required by Juv.R. 40(D(3)(b)." Juv.R. 40(D)(3)(b)(iv). Plain error is only found in "exceptional circumstances" where the error seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. *In re B.J. & L.J*, 12th Dist. Warren Nos. CA2016-05-036 and CA2016-05-038, 2016-Ohio-7440, ¶ 61.

{¶ 30} Mother did not appear for the permanent custody hearing, and her attorney could not explain Mother's absence to the juvenile court. Mother's attorney moved for a continuance, but the juvenile court denied the request. The court reasoned that the state was ready to proceed, witnesses were present, and it was unclear as to whether Mother would ever appear. Although the court denied the continuance, Mother's attorney participated in the hearing by questioning witnesses and presenting arguments on Mother's behalf. Moreover, the court did permit Mother, the child's father, and C.D. to testify at a later hearing. As such, the juvenile court's decision to deny the continuance did not impact the fairness or legitimacy of the proceedings, as Mother was able to present her reasons why permanent custody should be denied to the Agency. Mother's second assignment of error is therefore overruled.

{¶ 31} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.