[Cite as *In re A.S.*, 2016-Ohio-1580.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | | CASE NOS. CA2015-12-112 |
| A.S., et al. | : | CA2015-12-113 |
| | : | O P I N I O N |
| | | 4/18/2016 |
| | : | |
| | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 14-D000039

Richard D. Donenfeld, 120 West Second Street, Suite 2000, Dayton, Ohio 45402, guardian ad litem

Andrew J. Brenner, 7588 Central Parke Blvd., Mason, Ohio 45040, for appellant, D.S.

Jeffery E. Richards, 147 Miami Street, P.O. Box 536, Waynesville, Ohio 45068, for appellant, R.S.

David P. Fornshell, Warren County Prosecuting Attorney, Kathryn M. Horvath, 520 Justice Drive, Lebanon, Ohio 45036, for appellee, Warren County Children Services

**HENDRICKSON, J.**

{¶ 1} Appellants appeal a decision of the Warren County Court of Common Pleas, Juvenile Division, granting permanent custody of their children to appellee, Warren County Children Services (WCCS). For the reasons detailed below, we affirm.

{¶ 2} Mother is the biological mother of J.S. and A.S. The father of J.S. is currently

incarcerated for drug trafficking. The putative father of A.S. has never been tested for paternity and has had no involvement in this case. All parties were properly served. The matter presently before the court involves the appeals filed by Mother and J.S.'s father.

{¶ 3} On September 12, 2014, WCCS filed a neglect and dependency complaint and requested temporary custody of six-year-old J.S and three-year-old A.S. The complaint alleged that WCCS received information that J.S. had been without routine medical or dental care, and that her teeth were rotting. The referral noted concerns with the family's living arrangements, including allegations that their home was infested with bed bugs and had no running water. When the matter was initially referred to WCCS, A.S. could not be located. Later, it was discovered that Mother had placed A.S. in the care of her ex-boyfriend, a man she alleged had a violent past and had almost "beat her to death." Furthermore, the complaint also detailed a previous interaction with WCCS, in which Mother had been charged with child endangering after A.S. was found wandering outside of the family's apartment complex unsupervised.

{¶ 4} At a subsequent hearing, the parties stipulated that the children were dependent and the children were placed in the temporary custody of WCCS. A case plan was prepared and adopted by the juvenile court. The case plan included requirements that Mother, among other things: (1) attend drug, alcohol, and mental health assessments, (2) submit to drug screens, (3) refrain from criminal activity, and (4) obtain stable housing.

{¶ 5} Throughout the pendency of this matter, Mother made some attempts to comply with portions of the case plan, but was unreliable or failed to complete many of the requirements. The record reflects that Mother completed drug and alcohol assessments and also obtained employment. However, Mother also failed to appear for a number of drug screens, and failed a number of the drug tests that she did appear for, testing positive for cocaine, marijuana, and benzoylecgonine. In addition, Mother was sporadic in her visitation

with the children and would go long periods of time without contacting WCCS.

{¶ 6} In September 2015, WCCS moved for permanent custody. A permanent custody hearing was held on December 7, 2015. During the hearing, the state presented the testimony of the WCCS caseworker. The caseworker testified about the conditions leading to WCCS involvement, and stated that the children have since been placed in the same foster family and shown great improvement in their health and behavior.

{¶ 7} The caseworker explained that when A.S. was placed in the temporary custody of WCCS he demonstrated significant developmental delays. Despite being three years old at the time, the caseworker stated that A.S. was almost completely nonverbal with verbal skills comparable to a 15 to 18-month-old infant. Although Mother informed WCCS staff that A.S. was diagnosed with autism, the caseworker testified that A.S. was tested and does not have autism. While in his current placement, A.S. has received appropriate medical care and cognitive attention. Initially, A.S.'s foster parents taught A.S. to communicate through sign language. With the aid of speech therapy, A.S. is now verbal and has progressed to approximately the vocabulary of a two year old.

{¶ 8} In reference to J.S., the caseworker further elaborated on the severe dental neglect that she suffered while in her mother's care. In addition, the caseworker explained that J.S. suffered from behavioral issues and problems with her fine motor skills. While in WCCS's custody, J.S. has received appropriate dental care and is progressing in her use of fine motor skills.

{¶ 9} With respect to Mother and her progress, the caseworker testified that Mother did complete two drug and alcohol assessments, with neither assessment providing recommendations. However, the caseworker also testified that there was doubt with respect to Mother's candor in those assessments, as she repeatedly tested positive for drugs.

{¶ 10} In addition, the caseworker testified about Mother's sporadic attendance at

visitation and medical appointments, as well as her transient lifestyle. Although the children had consistently scheduled medical appointments every week, the caseworker stated that Mother attended only five out of the 52 appointments. Furthermore, although Mother's visitation schedule was suspended following positive drug screens, the caseworker testified about her attendance and timeliness for those visitation sessions. At the visitation sessions, Mother was on time for a dozen visits, but was late to eight sessions, and cancelled ten other sessions. Finally, the caseworker also testified about the lengthy periods of limited or no contact between the agency and Mother and the difficulty in making contact. For example, the caseworker noted that Mother had seven different phone numbers and four different addresses throughout the progression of this case.

{¶ 11} Thereafter, Mother testified on her own behalf. In her testimony, Mother admitted to using marijuana and the prescription drug Xanax, but she denied that she was a drug addict. Although Mother acknowledged her sporadic attendance, she primarily noted that she was unable to attend many of the visitation and medical appointments because she had transportation issues and was also very busy working several jobs. Despite the fact that she had not completed the entire case plan, Mother stated that she should retain custody of the children because she is bonded with them and, as their mother, is in the best position to care for them.

{¶ 12} Following the presentation of the evidence, the juvenile court granted the motion for permanent custody. Mother and J.S.'s father have separately appealed the juvenile court's decision.

*Mother's Appeal*

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT ERRED IN GRANTING THE STATE'S MOTION FOR PERMANENT CUSTODY.

{¶ 15} In her sole assignment of error, Mother argues the juvenile court erred by granting permanent custody in favor of WCCS. After a thorough review of the record, we find Mother's assignment of error is without merit.

{¶ 16} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *Id.*

{¶ 17} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. Second, the court must find that any of the following apply: (1) the child is abandoned; (2) the child is orphaned; (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a)-(e); *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033,

2015-Ohio-3709, ¶ 10. Only one of those findings must be met for the second prong of the permanent custody test to be satisfied. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

{¶ 18} In the present case, the juvenile court found by clear and convincing evidence that Mother had abandoned J.S. within the meaning of R.C. 2151.414(B)(1)(b) and also found that the children could not be placed with either parent within a reasonable time pursuant to R.C. 2151.414 (B)(1)(a). With respect to the abandonment claim, the evidence supported a finding that Mother had not contacted J.S. since June of 2015, at least 90 days prior to the motion for permanent custody. Mother does not dispute the abandonment issue with respect to J.S., but instead challenges the juvenile court's decision that A.S. could not be placed with either parent within a reasonable time.

{¶ 19} Despite Mother's arguments to the contrary, we find the evidence supports, by clear and convincing evidence, the juvenile court's decision. In the present case, A.S.'s putative father has had no contact with the child and has not even consented to a paternity test. Therefore, A.S. cannot be placed with his father within a reasonable time.

{¶ 20} With respect to Mother, as discussed in more detail below, Mother has failed to complete her case plan and has failed to remedy the conditions that necessitated the removal of the children. Specifically, the juvenile court found that Mother failed to utilize rehabilitative services and material resources for the purposes of changing parental conduct. Furthermore, there is evidence that Mother has been abusing drugs during the pendency of this case and has been sporadic in both her visitation with the children and in the attendance of the children's medical appointments. As the record clearly and convincingly supports the juvenile court's decision that the children cannot be placed with either parent within a reasonable time, we will address Mother's remaining claim that the juvenile court erred by finding that it was in the children's best interest to be in the permanent custody of WCCS.

{¶ 21} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 22} In granting the motion for permanent custody, the juvenile court considered the best interest factors in light of the evidence presented at the hearing. With respect to R.C. 2151.414(D)(1)(a), the juvenile court found the children have been placed in a stable foster home, established a relationship with their foster parents, and are happy in their current placement. The juvenile court also found that the children have been thriving since their arrival in the foster home and the foster family has expressed their desire for a permanent placement.

{¶ 23} In its consideration of R.C. 2151.414(D)(1)(b), the juvenile court indicated that it did not conduct an in camera review, but that the guardian ad litem recommended that the court grant permanent custody to WCCS.

{¶ 24} With respect to R.C. 2151.414(D)(1)(c), the juvenile court found that the

children have been in the custody of WCCS since September 12, 2014 and have remained in the custody of the WCCS throughout the pendency of this case.

{¶ 25} In considering R.C. 2151.414(D)(1)(d), the juvenile court found the children are in need of a legally secure placement, the agency can provide the necessary legally secure placement, and such placement is the only way the children's needs can be met. The juvenile court stated that none of the children's parents have been able to meet the children's needs and failed to remedy the conditions that necessitated removal.

{¶ 26} Finally, with respect to R.C. 2151.414(D)(1)(e), the juvenile court referenced its prior findings that Mother had not had any contact with J.S. in over 90 days and had abandoned her.

{¶ 27} Based on these factors the juvenile court found by clear and convincing evidence that it was in the children's best interest to grant permanent custody to WCCS. We have carefully and thoroughly reviewed the evidence in this case and find that the juvenile court's determination regarding the best interest of the children is supported by clear and convincing evidence.

{¶ 28} Throughout the pendency of this matter, Mother has been sporadic in her visitation with the children, has failed to maintain contact with WCCS, and failed to complete the necessary case plan services. While Mother claims to be busy working and has the ability to care for the children, she has not demonstrated that she can rectify the very serious medical, dental, and developmental concerns that necessitated WCCS involvement. Since the children have been removed from her care and placed with a foster family, they have received appropriate care and have "thrived" in that placement. The children's foster family has taken the steps necessary to treat those concerns and have been instrumental in helping the children overcome their behavioral and cognitive issues. Our conclusion is further supported by the fact that Mother has admitted to using drugs while supervising the children,

and has tested positive for drugs during the course of these proceedings. Nevertheless, Mother fails to acknowledge any possibility of drug addiction or seek help to resolve those issues.

{¶ 29} In light of the foregoing, we find the juvenile court's decision was supported by clear and convincing evidence and find no error in the juvenile court's decision to grant permanent custody of the children to WCCS. Mother's sole assignment of error is overruled.

*Father's Appeal*

{¶ 30} Counsel for J.S.'s father has filed a brief with this court pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967), which: (1) indicates that a careful review of the record from the proceedings below fails to disclose any errors by the trial court prejudicial to the rights of father upon which an assignment of error may be predicated; (2) lists one potential error "that might arguably support the appeal," *Anders* at 744; (3) requests that this court review the record independently to determine whether the proceedings are free from prejudicial error and without infringement of father's constitutional rights; (4) requests permission to withdraw as counsel for father on the basis that the appeal is wholly frivolous; and (5) certifies that a copy of both the brief and motion to withdraw have been served upon father.

{¶ 31} Having allowed J.S.'s father sufficient time to respond, and no response having been received, we have accordingly examined the record and find no error prejudicial to his rights in the proceedings in the trial court. Therefore, the motion of counsel for J.S.'s father requesting to withdraw as counsel is granted, and J.S.'s father's appeal is hereby dismissed for the reason that it is wholly frivolous.

*Conclusion*

{¶ 32} Mother's assignment of error is overruled and the juvenile court's decision granting permanent custody to WCCS is affirmed. J.S.'s father's appeal is dismissed and his

counsel's request to withdraw is granted.

{¶ 33} Judgment affirmed.

M. POWELL, P.J., and PIPER, J., concur.