[Cite as *In re B.L.*, 2018-Ohio-547.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | |
| | | CASE NOS. CA2017-09-147 |
| B.L., et al. | : | CA2017-09-148 |
| | : | O P I N I O N |
| | | 2/12/2018 |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2014-0268

Michael T. Gmoser, Butler County Prosecuting Attorney, Michael Greer, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Adolfo Olivas, 10 Journal Square, Suite 300, Hamilton, Ohio 45011, guardian ad litem

Dawn S. Garrett, 9435 Waterstone Blvd., Suite 140, Cincinnati, Ohio 45249, for appellant

**HENDRICKSON, P.J.**

{¶ 1} Father, the biological father of B.L.1 and B.L.2, appeals the decisions of the Butler County Common Pleas Court, Juvenile Division, which granted permanent custody of his children to the Butler County Department of Job and Family Services. For the reasons discussed below, this court affirms the decisions of the juvenile court.

{¶ 2} On July 14, 2014, the Butler County Department of Job and Family Services ("JFS" or "the agency") filed a complaint alleging that B.L.1, age one, and B.L.2 , age six

months, were neglected, abused, and dependent children. The complaint alleged that the children's parents had a history with JFS dating back to 2007 with concerns of physical abuse and neglect. The complaint alleged that B.L.1 was observed lying in a crib with feces. B.L.2 was in a "bouncy seat" or car seat and could barely move. There was no food in the home other than a few canned goods. Both parents admitted to abusing drugs and Mother appeared to be under the influence at the time police removed the children.[1]

{¶ 3} The complaint requested that the court grant temporary custody of the children to JFS. The court held an emergency ex parte hearing on the same day and granted JFS temporary custody. JFS placed the children in foster care.

{¶ 4} JFS created a case plan for reunification. The case plan required Mother and Father to refrain from substance abuse, submit to random drug tests, and seek treatment for substance abuse. Mother and Father were also required to obtain and maintain stable housing and complete a parenting program.

{¶ 5} In August 2014, following JFS' request, the court transferred temporary custody of the children to their maternal aunt. In September 2014, the court adjudicated the children neglected, abused, and dependent. In April 2014, after the maternal aunt informed the agency she could no longer care for the children, the court placed the children back in the agency's temporary custody. JFS placed the children in foster care.

{¶ 6} The parents made some progress towards reunification. Father made some of this progress while in jail, as he was incarcerated from the time of removal through January 2015. After his release from jail, Father did not test positive for illegal narcotics and established stable housing for nine months. Eventually, the agency began to liberate the parents' visits with their children, going so far as to allow overnight unsupervised visitation

---

1. Mother and Father have two older children who were also removed from the home. These children were eventually adopted by a relative and are not at issue in this case.

and weekend visits. However, by the summer of 2016, Mother and Father relapsed. Neither parent appeared for a July 2016 hearing. After the relapse, both parents minimally participated in recommended substance abuse treatment and then ceased communication with the agency. The agency then moved to restrict visitations to supervised visits only.

{¶ 7} In October 2016, the court held a review hearing wherein it found that neither parent was participating in case plan services and both were avoiding drug screens. JFS then moved for permanent custody. In November 2016, the agency removed Mother from the case plan for failure to participate in case plan services and communicate with the agency for several months.

{¶ 8} In April 2017, Father filed a "brief on interstate placement of children when interstate home study is denied as applied to custody proceedings" ("brief on ICPC"). In the brief, Father stated that shortly after the children's removal in 2014, JFS requested that a Texas children services agency conduct an interstate home study on the children's maternal grandmother, a Texas resident. JFS made the request pursuant to Ohio's interstate compact on the placement of children ("ICPC"). The Texas agency approved the grandmother's home study. However, JFS considered the grandmother a "backup plan" legal custodian, as the children were placed locally with the maternal aunt.

{¶ 9} Sometime after the agency filed the permanent custody motion, Father's brief alleged that he and Mother requested the agency place the children with the grandmother in lieu of permanent custody. The agency then requested a second home study.[2]

{¶ 10} The Texas agency did not approve the second home study. Of primary concern, the Texas agency indicated that the grandmother did not believe that the children should have been removed from Mother and Father. Grandmother also exhibited poor

---

2. The record reflects that the 2014 Texas home study was considered valid for only one year.

decision-making skills. Several relatives expressed concern to the Texas agency concerning the grandmother's suitability. Overall, the agency was concerned that the grandmother demonstrated an inability to provide the children with a structured environment and to protect the children.

{¶ 11} Father argued that the second home study significantly conflicted with the findings of the first home study and he therefore wished to challenge the second home study. The ICPC required Father to appeal the Texas home study decision through available appellate remedies in Texas. However, Texas did not allow appeal of failed home studies. Accordingly, Father argued that his inability to appeal the Texas agency's decision amounted to an unconstitutional denial of his due process rights. Father requested that the court permit him to present evidence as to why the grandmother was an appropriate legal custodian.

{¶ 12} The court held a hearing and denied the brief on ICPC on the basis that Ohio was an inappropriate forum to challenge a Texas policy or law. The court also indicated it would not hear any evidence on placement with the grandmother. Father did not proffer any evidence.

{¶ 13} In May 2017, the juvenile court held the hearing on permanent custody. The court heard testimony from the JFS caseworker assigned to the case and from Father. Mother did not appear for the hearing or otherwise defend against the permanent custody motion.[3]

{¶ 14} At the hearing, the caseworker testified that she was assigned to the case in November 2014. Initially, Mother and Father made progress on their case plan for reunification. Both completed a program on "living skills" and initially maintained stable housing and employment. Father also completed an out-patient drug treatment program.

---

3. Mother is not a party to this appeal.

However, following Mother's and Father's drug relapse in or around the summer of 2016, Father stopped participating in case services and only had sporadic communication with the caseworker, including gaps of months between communication. At the time of the permanent custody hearing, Father did not have stable housing and was living with a friend. Father exercised visitation and the visits went well, although the caseworker did not observe a bond between Father and the children.

{¶ 15} Father testified that he was in jail from the time of the children's removal in July 2014 through January 2015. Father was also incarcerated in February 2017 for a probation violation and an aggravated menacing charge. Father was released from jail in April 2017, shortly before the permanent custody hearing.

{¶ 16} Father admitted testing positive for marijuana in February 2016. Father admitted testing positive for oxycodone in June 2016 although he claimed he had a prescription for the drug. Father said he last used drugs in February 2017 and was currently seeking treatment for substance abuse and would be participating in an assessment after the hearing. Father had been speaking to someone at a counseling agency on the phone after being released from jail. Father admitted that he did not have housing but was working as a delivery driver for a subcontractor of Sears. Father conceded that he was not prepared to receive custody of his children but would be ready to do so in two to three months.

{¶ 17} After hearing the testimony and considering the exhibits that were entered into evidence, including a social summary containing the agency's progress notes on Father's participation in the case plan for reunification, the magistrate issued a decision finding that the children had been in the agency's temporary custody for 12 or more months of a consecutive 22-month period and that a grant of permanent custody to the agency was in the children's best interest. Father filed objections, which were subsequently overruled by the trial court. Father appeals, raising two assignments of error.

{¶ 18} Assignment of Error No 1.

{¶ 19} THE COURT'S REFUSAL TO PERMIT FATHER TO SUBMIT EVIDENCE ON THE APPROPRIATENESS OF A POSSIBLE RELATIVE CUSTODIAL PLACEMENT OR CONSIDER THAT PLACEMENT AND THE COURT'S SUBSEQUENT DECISION AND ORDER OF PERMANENT CUSTODY VIOLATED THE FATHER'S CONSTITUTIONAL RIGHTS BECAUSE THE INTERSTATE COMPACT ON THE PLACEMENT OF CHILDREN ADOPTED BY OHIO AS O.R.C. [§ 5103.20] IS UNCONSTITUTIONAL ON ITS FACE AND AS APPLIED IN THIS [MATTER AS] IT AFFECTS SUBSTANTIAL LIBERTY RIGHTS AND PROVIDES NO DUE PROCESS VENUE OR OPPORTUNITY FOR HEARING OR APPEAL.

{¶ 20} Father challenges the constitutionality of the ICPC, codified at R.C. 5103.20.[4] Father alleges that the ICPC violated his right to due process because he could not challenge the Texas agency's adverse decision on the grandmother's second home study. Accordingly, Father contends that the ICPC unconstitutionally infringed on his fundamental right to the care and custody of his children.

{¶ 21} The ICPC provides that when an Ohio agency requests that another state ("the receiving state") perform a local assessment or home study for a child and the receiving state does not approve the placement, there is no right to judicial review of that determination in Ohio. R.C. 5103.20, Article VI, Section (B). However, the statute further provides that any "interested party" has a right to seek judicial review through available procedures in the receiving state. *Id.* at Section (C)(1) through (C)(2).

{¶ 22} Father posits that there is no right to appeal a denied home study in Texas. The state did not challenge this claim. Accordingly, this court will presume, for purposes of

---

4. Father's assignment of error suggest that he is asserting both facial and as-applied constitutional challenges to the statute. However, Father's argument is limited to an as-applied challenge because he does not contend that there are no circumstances under which R.C. 5103.20 would be constitutional. *See Harrold v Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 37, citing *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095 (1987).

this opinion only, that Father, or any other interested party, lacked any ability to appeal or obtain a hearing challenging the Texas home study.[5]

{¶ 23} This court would be concerned if it were true that an Ohio law had effectively incorporated Texas law or policy precluding judicial review of an administrative agency's decision. Nonetheless, we need not address that issue today because Father's due process argument necessarily presumes that the juvenile court could have granted legal custody to the grandmother.

{¶ 24} Pursuant to R.C. 2151.353(A)(3), the juvenile court is authorized to award legal custody of a child adjudicated abused, neglected, or dependent to any person who, prior to the dispositional hearing, files a motion requesting legal custody. The court may also grant legal custody to a proposed legal custodian who is identified as such in a complaint or motion filed by a party to the proceedings if the proposed legal custodian signs a "statement of understanding for legal custody." The required statement of understanding – set forth in R.C. 2151.353(A)(3)(a) thru (d) – ensures that the legal custodian, who is not moving on their own for legal custody, understands the special responsibility and permanence involved in accepting legal custody of a child or children. The proposed legal custodian must also agree to be present at the dispositional hearing.

{¶ 25} The children's grandmother was never a party to the proceedings. She did not intervene and file a motion for legal custody. Father also did not move the juvenile court to appoint the grandmother legal custodian. Arguably, the juvenile court might construe Father's brief on ICPC as a motion to appoint grandmother custodian. Even if it did so,

---

5. Father cites a webpage in support of his claim. *See* http://icpcstatepages.org/texas/appeals. The website appears to be affiliated with or created by the American Public Human Services Association and the Association of Administrators of the Interstate Compact on the Placement of Children. The website consists of a visual index containing state-specific data concerning the implementation of the interstate compact on the placement of children in all adopting states. Father's specific hyperlink leads to a webpage listing appellate rights concerning home studies or ICPC decisions in Texas. The webpage simply indicates that "No" appeals are permitted in Texas, but cites no legal authority or other source for this assertion.

Father failed to attach, otherwise file, or proffer the required statement of understanding. This court has consistently held that the requirements for seeking nonparent legal custody under R.C. 2151.353(A)(3) and the Ohio Juvenile Rules of Procedure are mandatory. *In re L.R.T.*, 165 Ohio App.3d 77, 2006-Ohio-207, ¶ 12-13 (12th Dist.); *In re H.M.*, 12th Dist. Clinton Nos. CA2005-09-022 and CA2005-09-023, 2006-Ohio-819, ¶ 15; *In re C.P.*, 12th Dist. Brown No. CA2010-12-025, 2011-Ohio-4563, ¶ 21; *In re J.P.*, 12th Dist. Butler Nos. CA2015-08-160 and CA2015-08-161, 2016-Ohio-7, ¶ 8-10.

{¶ 26} In this case, the grandmother's only connection to the case and to the court has been through out-of-state home studies. The requirement of a signed statement of understanding promotes the policy embodied throughout the child protective services statutes and regulations to expeditiously obtain permanency for a child. The statement is a confirmation that a person identified as a legal custodian is, indeed, willing to serve in that capacity and not merely a ploy asserted defensively to defeat a motion for permanent custody. The statement of understanding also informs the person of the nature of legal custody and some of the attendant responsibilities to protect against failed placements with persons who are surprised to find than they have assumed more responsibility than anticipated.

{¶ 27} This court is aware that we have previously indicated that a statement of understanding may not be a technical requirement in the context of a motion for legal custody brought under R.C. 2151.415(A). *See In re E.J.*, 12th Dist. Warren No. CA2014-07-098, 2015-Ohio-731, ¶ 9. The dispositional alternatives available to the juvenile court within that statute include placing a child in the legal custody of a relative or other interested nonparent but do not expressly require a statement of understanding. *See* R.C. 2151.415(A)(3). However, the state's October 2016 motion for permanent custody was necessarily brought under R.C. 2151.413 because the time for filing for dispositional alternatives under R.C.

2151.415(A) expired in July 2016, or two years from the filing date of the complaint. *See* R.C. 2151.353(G); R.C. 2151.415(A)(6) and (D). R.C. 2151.413 contains no dispositional alternatives allowing the court to grant legal custody to a nonparent. Thus, the court could only have construed Father's brief on ICPC as a motion for nonparent legal custody filed pursuant to R.C. 2151.353(A)(3).

{¶ 28} In sum, Father's due process argument with respect to the ability to appeal the adverse Texas decision, and his argument that the court erred in refusing to allow him to submit evidence of the appropriateness of placement with the grandmother fail because the juvenile court could not have granted legal custody to the grandmother in the absence of her own motion or a signed statement of understanding. This court overrules Father's first assignment of error.

{¶ 29} Assignment of Error No. 2:

{¶ 30} THE COURT'S DECISION AND ORDER OF PERMANENT CUSTODY VIOLATED THE PARENTS' CONSTITUTIONAL RIGHTS, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDINGS BECAUSE THE AGENCY FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE BEST INTEREST OF THE CHILDREN REQUIRES AN AWARD OF PERMANENT CUSTODY.

{¶ 31} Father challenges the juvenile court's decisions to award permanent custody of the children to JFS. Father argues that the evidence showed he attended visitation regularly, that he was reengaged in substance abuse treatment, that he was working, and that he would have been able to reunify with the children if allowed another two or three months to prepare.

{¶ 32} "The rights to conceive and to raise one's children have been deemed 'essential,' * * *." *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972), quoting *Meyer*

*v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923). "Despite the fact that we have found that parents who are suitable have a paramount right to raise and care for their children, it is equally well settled that '[t]he fundamental interest of parents is not absolute * * *.'" (Citations omitted.) *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, ¶ 40. "The constitutional right to raise one's children does not include a right to abuse, exploit, or neglect them, nor is there a right to permit others to do so." *Id.* "The state's power to terminate parental rights is circumscribed * * *." *Id.* at ¶ 41, citing *In re Cunningham*, 59 Ohio St.2d 100, 105 (1979). However, "when that authority is properly invoked, it is fully proper and constitutional to remove children from their parents' care. '[S]uch an extreme disposition is nevertheless expressly sanctioned * * * when it is necessary for the "welfare" of the child.'" *Id.*, quoting *Cunningham* at 105.

{¶ 33} The state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met before a natural parent's constitutionally protected liberty interest in the care and custody of his or her child may be terminated. *In re K.W.*, 12th Dist. Butler No. CA2015-06-124, 2015-Ohio-4315, ¶ 11, citing *Santosky v. Kramer*, 455 U.S. 745, 769, 102 S.Ct. 1388 (1982). Clear and convincing evidence is that which will produce in the trier of fact a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). An appellate court's review of a juvenile court's decision granting permanent custody is generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination. *In re H.D.*, 12th Dist. Warren No. CA2016-11-098, 2017-Ohio-1333, ¶ 14. An appellate court will not reverse a finding by the juvenile court that the evidence was clear and convincing absent sufficient conflict in the evidence. *In re L.W.*, 12th Dist. Warren Nos. CA2017-05-066 thru CA2017-05-069, 2017-Ohio-8433, ¶ 29. "However, even if the juvenile court's decision is supported by sufficient evidence, 'an appellate court may nevertheless

conclude that the judgment is against the manifest weight of the evidence.'" *In re H.D.* at ¶ 14, quoting *In re T.P.,* 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶ 19.

{¶ 34} In determining whether a decision is against the manifest weight of the evidence, an appellate court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. The presumption in weighing the evidence is in favor of the finder of fact, which we are especially mindful of in custody cases. *In re S.M.*, 12th Dist. Clermont No. CA2015-01-003, 2015-Ohio-2318, ¶ 10; *In re C.Y.*, 12th Dist. Butler Nos. CA2014-11-231 and CA2014-11-236 thru CA2014-11-238, 2015-Ohio-1343, ¶ 25. As a result, "[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Eastley* at ¶ 21.

{¶ 35} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. Second, the court must find that any of the following apply: (1) the child is abandoned; (2) the child is orphaned; (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; or (5) the child or another child in the custody of the parent from whose custody the child has been

removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a) thru (e); *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. "Only one of those findings must be met for the second prong of the permanent custody test to be satisfied." *In re A.S.*, 12th Dist. Warren Nos. CA2015-12-112 and CA2015-12-113, 2016-Ohio-1580, ¶ 17.

**{¶ 36}** With respect to the second prong of the permanent custody test, the court found that the children had been in the agency's temporary custody for at least 12 months of a consecutive 22-month period. Father does not challenge this finding, but instead argues against the juvenile court's determination that it is in the children's best interest to grant permanent custody to the agency.

**{¶ 37}** R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing, the court shall consider all relevant factors, including, but not limited to the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶ 38}** In awarding permanent custody to JFS, the juvenile court considered each of

the best interest factors in light of the evidence presented at the hearing. With respect to R.C. 2151.414(D)(1)(a), the juvenile court found that the agency removed the children in 2014 because of unsafe and unsanitary conditions at the home and that drug paraphernalia consistent with heroin abuse was located at the home. The parents made some progress towards reunification, including exercising visits with the children. Father's progress in his case plan was partially due to his incarceration and treatment at a correctional facility. The parents' progress collapsed in the middle of 2016 when both parents relapsed.

{¶ 39} Mother and Father then ceased participating in case plan services and stopped or reduced visiting with their children. The visits Father exercised after relapsing have gone well, and Father exhibited a loving bond with his children. However, Father had at times allowed more than 90 days to elapse since visiting with his children.

{¶ 40} The court found that the children were living together in the same foster home, where they have flourished and have been integrated into their foster family. The foster family was interested in adopting the children.

{¶ 41} As for R.C. 2151.414(D)(1)(b), the juvenile court noted that the magistrate did not interview the children but that the children's guardian ad litem recommended that the court grant custody in favor of the agency.

{¶ 42} With respect to R.C. 2151.414(D)(1)(c), the court found that the children had been in the agency's custody in excess of 900 days and were therefore in JFS' temporary custody for the requisite 12 or more months of a consecutive 22-month period.

{¶ 43} Regarding R.C. 2151.414(D)(1)(d), the court concluded that the children needed a legally secure placement and that such a placement could only be achieved through a grant of permanent custody to the agency. In this regard, the court observed that the children had been placed in substitute care nearly their entire young lives, and that both parents, through failure to maintain contact, participate in case plan services, and drug

relapses, had not made themselves potential sources of permanence in their children's lives. The court noted that the only family member who indicated a desire to have custody of the children was Father, but his incarceration and lack of a relationship with his children made placement with him impossible.

{¶ 44} Finally, concerning R.C. 2151.414(D)(1)(e), the court found that both parents failed to have contact with their children for periods greater than 90 days, and thus found that both parents had abandoned their children.

{¶ 45} After thoroughly reviewing the record, we find that sufficient credible evidence supported the juvenile court's determination regarding the best interest of the children. This court does not dispute that Father loves his children. However, Father's decision to continue to abuse illegal narcotics and violate the law – decisions which repeatedly resulted in him serving jail time and being unable to visit his children or participate in his case plan for reunification – precluded him from establishing the stability necessary to regain custody. Early in the case Father made some progress towards bettering his life and possibly reunifying with his young children. He did not test positive for illegal narcotics throughout 2015 and was able to maintain stable housing when he was not incarcerated. Nonetheless, Father repeatedly demonstrated that he was incapable of maintaining his sobriety or staying out of jail even though custody of his children was in jeopardy. B.L.1 and B.L.2 were in foster care for over two years before the agency moved for permanent custody, thus Father had ample time to work his case plan. The children in this case need and deserve care and permanence. Fortunately, they are receiving stable care and support in their foster arrangement, with a foster family that wishes to adopt them.

{¶ 46} Accordingly, this court concludes that the juvenile court's findings are supported by sufficient credible evidence and are otherwise not against the manifest weight of the evidence. The juvenile court did not err in finding it was in the children's best interest

to be placed in the permanent custody of JFS. Father's second assignments of error is, therefore, overruled.

{¶ 47}   Judgment affirmed.

RINGLAND and M. POWELL, JJ., concur.