[Cite as *In re Z.W.*, 2020-Ohio-3100.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: Z.W. | : | APPEAL NO. C-200061<br>TRIAL NO. F16-1548 |
| | : | *O P I N I O N.* |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 27, 2020

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Erica Bowen*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Jeffrey J. Cutcher*, for appellant Mother,

*Megan E. Busam*, Guardian ad Litem for Z.W..

**BERGERON, Presiding Judge.**

{¶1} In this permanent custody case, the juvenile court ordered the termination of Mother's parental rights based on a chronic history of substance abuse and mental health problems, which contributed to the termination of rights over her other children. Conducting our independent review, we find that clear and convincing evidence supports the juvenile court's decision, and we accordingly affirm.

I.

{¶2} In January 2019, Mother gave birth to Z.W., but the Hamilton County Department of Job and Family Services ("HCJFS") quickly became involved after both Mother and Z.W. tested positive for oxycodone. Based in part on this positive test, and in part over concerns regarding Mother's history with substance abuse, mental health issues, and involuntary termination of her rights as to her four other children, HCJFS opened a case, requesting an ex parte emergency grant of custody of Z.W, which the court granted. HCJFS later filed an amended custody complaint requesting permanent custody of Z.W., who was eventually adjudicated abused, neglected, and dependent.

{¶3} Prior to the hearing on permanent custody (a period of approximately eight months), HCJFS worked with Mother towards reunification with Z.W. Though Mother's case plan was not formally adopted by the court at that time, Mother's case worker, Kacie Rolfes, testified to ongoing conversations with Mother regarding HCJFS's expectations of Mother in order to reunite her with Z.W. This included Mother's participation in individual therapy and med-somatic treatment to address mental health concerns, submitting to random toxicology screens, and maintaining stable housing and employment. HCJFS also

facilitated visits with Z.W., providing Mother with over 200 bus passes to alleviate transportation concerns.

{¶4} But as time passed, Mother struggled to meet these goals. While she secured a job and an apartment, she failed to take advantage of referrals from HCJFS for therapy and med-somatic services. Shortly after Z.W. was removed from her care, Mother tested positive for morphine and marijuana. She failed to participate in two subsequent toxicology screens and a hair follicle test, but tested negative for drugs in the last screen she took. Ms. Rolfes also noted that Mother missed or cancelled several visits with Z.W., which contributed to HCJFS's decision to discontinue facilitating visits with Z.W.

{¶5} In September 2019, a hearing on the permanent custody motion convened before a magistrate, where the magistrate heard the testimony of both Mother and Ms. Rolfes.[1] For her part, Mother emphasized that she was maintaining stable housing and a job with a local restaurant. As to her lack of participation in services, Mother cited schedule conflicts with her job and lack of transportation, but insisted that she would participate in any such services if ordered to do so (as her case plan was not yet formally adopted). The magistrate, however, found Mother's testimony unconvincing, deeming her explanation for missing services and visits due to a 20-minute walk to the bus stop unreasonable and doubting Mother's sincerity to participate in services if ordered to do so, given her lack of progress in the current case. Based on this evidence, the magistrate later issued a decision finding permanent custody to HCJFS to be in Z.W.'s best interest. Mother timely filed objections to the magistrate's decision, and the juvenile court held a hearing on the

---

[1] Z.W.'s alleged father took no part in these proceedings and has been absent throughout the pendency of this case.

objections in November 2019, but ultimately adopted the magistrate's decision awarding permanent custody to HCJFS, overruling Mother's objections.

{¶6}   Mother now appeals the juvenile court's decision and raises a single assignment of error challenging the award of permanent custody of Z.W. to HCJFS as contrary to the manifest weight of the evidence.

II.

{¶7}   Review of a juvenile court's grant of permanent custody requires our independent finding that the decision is supported by clear and convincing evidence.  *See In re L.M.B. and M.A.B.*, 1st Dist. Hamilton Nos. C-200033 and C-200044, 2020-Ohio-2925, ¶ 8; *In re C Children*, 1st Dist. Hamilton Nos. C-190650 and C-190682, ¶ 8.   Clear and convincing evidence " 'produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' "  *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.  As to challenges to the weight of the evidence, we review the entire record to determine whether, in resolving conflicts in the evidence, the trial court lost its way, resulting in a manifest miscarriage of justice.  *See In re A.B.*, 1st Dist. Hamilton Nos. C-150307 and C-150310, 2015-Ohio-3247, ¶ 16.

A.

{¶8}   In this case, HCJFS moved for a grant of permanent custody as part of an original disposition.  *See* R.C. 2151.27(C) and 2151.353(A)(4).  Granting permanent custody as an original disposition, however, requires that the juvenile court determine that (1) the child cannot be placed with either parent within a reasonable time or should not be placed with the parent utilizing the factors set forth in R.C. 2151.414(E), and (2) that the grant of

permanent custody is in the best interest of the child based upon the factors enumerated in R.C. 2151.414(D)(1). *See* R.C. 2151.353(A)(4); *In re R.B.*, 1st Dist. Hamilton Nos. C-190319 and C-190331, 2019-Ohio-3469, ¶ 10.

{¶9} Therefore, we begin our analysis by examining the juvenile court's findings supporting its determination that Z.W. could not be returned to Mother's care within a reasonable time or should not be returned to Mother. In making this determination, R.C. 2151.414(E) explains "the court shall consider all relevant evidence," enumerating various factors that the court can consider, and upon determining "one or more * * * exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent[.]" R.C. 2151.414(E).

{¶10} The juvenile court here found several factors satisfied. To begin, the court pointed to R.C. 2151.414(E)(1) because Mother "failed continuously and repeatedly to remedy the problems that initially caused [Z.W.] to be placed outside the * * * home" and R.C. 2151.414(E)(2) because Mother had "[c]hronic mental illness * * * or chemical dependency * * * that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time[.]" The juvenile court also found R.C. 2151.414(E)(11) satisfied, as Mother failed to present clear and convincing evidence that "notwithstanding the prior termination [of parental rights], the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child."

{¶11} Clear and convincing evidence supports these conclusions. After completing a diagnostic assessment, Mother was diagnosed with "unspecified bipolar and related

5

disorder" and both mild "cannabis use disorder" and "alcohol use disorder" (in remission). As part of treatment, individual therapy and pharmacological management, i.e., med-somatic services, were recommended. Ms. Rolfes testified to coordinating at least two referrals for individual therapy and another referral for med-somatic services, but Mother never followed up on these. Mother insisted that she had current prescribed medication for her "bipolar seizures" and depression, but admitted she never provided any corroboration of this to HCJFS.

{¶12} State's exhibit 1, Mother's diagnostic assessment, chronicles Mother's ongoing struggle with substance abuse and mental health since childhood. It also reflects Mother's assertion that she has been "clean" for over ten years, despite testing positive for drugs twice during 2019. In addition to the positive toxicology screen in February, Mother failed to take two other screens and refused a hair follicle test. Mother does not dispute these things, but rather emphasizes her last screen, which was negative, as proof of her sobriety. Mother also justified her missed appointments and visits due to the 20-minute walk to the bus stop and conflicts with her work schedule. Ms. Rolfes testified that despite requests for Mother's work schedule to accommodate appointments, Mother supplied her with only one schedule. The magistrate refused to find these acceptable reasons for not participating in services and visits.

{¶13} Despite uncontroverted evidence of Mother's failure to participate in services, she points to her stable housing and work as evidence that she should be allowed more time to complete her case plan. She specifically criticizes the juvenile court's weighing of the evidence in this regard. But the magistrate's decision (later adopted by the juvenile court) acknowledged Mother's housing and a job—and while this is certainly a beneficial point for

Mother, it failed to overcome her drug use and mental health challenges, and her refusal to engage in treatment for those problems. Based on the evidence, the magistrate and later juvenile court concluded that Mother's lack of progress regarding her mental health and substance abuse satisfied the requirements under R.C. 2151.414(E)(1) and (E)(2). *See In re P.,* 1st Dist. Hamilton Nos. C-190309 and C-190310, 2019-Ohio-3637, ¶ 24-25 (R.C. 2151.414(E)(1) and (E)(2) findings supported by clear and convincing evidence and not against the weight of the evidence where Mother failed to take medicine or participate in therapy, skipped drug screens, and failed to substantially remedy problems that led to the children's removal); *In re R.B.,* 1st Dist. Hamilton Nos. C-190319 and C-190331, 2019-Ohio-3469, at ¶ 15-16, 20 (evidence taken as a whole supported (E)(1) and (E)(2) findings where Mother refused to engaged in mental health and substance abuse services).

{¶14} Finally, Mother concedes that due to the involuntary termination of her rights as to her four other children, she bore the burden to provide clear and convincing evidence that she is now able to provide a legally-secure home and adequate care for Z.W. *See In re R.D.,* 5th Dist. Stark No. 2019CA00146, 2020-Ohio-1456, ¶ 42 ("The burden is shifted to Mother to prove by clear and convincing evidence that, notwithstanding the prior termination, she can provide a legally-secure permanent placement and adequate care for [her child's] health, welfare, and safety."). But when questioned by the magistrate as to why things differed this time around, Mother offered little by way of proof, retreating again to her housing and employment, concluding "I'm just a better person than I was." Ultimately, the juvenile court determined that Mother failed to carry her burden, particularly given her failure to make significant progress with her services. *See In re M.B.* 10th Dist. Franklin No. 04AP755, 2005-Ohio-986, ¶ 22 ("Appellant failed to successfully complete significant

7

elements of his case plan, despite opportunities to do so. Such failure is grounds for terminating appellant's parental rights.").

{¶15} Mother challenges the magistrate and juvenile court as misconstruing her testimony in finding that she was only willing to participate in services if ordered to do so. The evidence reflected that Mother had not completed services, and while she testified that she would comply with any case plan the court ordered, that assurance could be discounted in light of her history of noncompliance with case plan services, which contributed to involuntary termination of her parental rights in the past. While Mother may not have explicitly stated that she would *only* comply if ordered to do so, the practical effect of her actions throughout the pendency of the case, coupled with her testimony, supports the juvenile court's conclusion of her unwillingness to voluntarily comply with services. *See In re A.B.*, 1st Dist. Hamilton Nos. C-150307 and C-150310, 2015-Ohio-3247, at ¶ 16 (weight of the evidence challenges requires weighing the evidence and all reasonable inferences); *Matter of B.L.*, 2018-Ohio-547, 105 N.E.3d 379, ¶ 34 (12th Dist.) ("The presumption in weighing the evidence is in favor of the finder of fact, which we are especially mindful of in custody cases.").

{¶16} In sum, the juvenile court's finding that Z.W. could not or should not be placed with Mother was supported by clear and convincing evidence, and therefore not contrary to the manifest weight of the evidence.

B.

{¶17} As we turn to the best interest findings, R.C. 2151.414(D)(1) requires that a court consider all relevant factors, including those delineated in R.C. 2151.414(D)(1)(a) through (e). Under this analysis, "no single factor holds greater weight or heightened

significance, as the court must weigh them all in its analysis." *In re L.M.B. and M.A.B.*, 1st Dist. Hamilton Nos. C-200033 and C-200044, 2020-Ohio-2925, at ¶ 13; *In re P.*, 1st Dist. Hamilton Nos. C-190309 and C-190310, 2019-Ohio-3637, at ¶ 35 (same).

{¶18} Turning to the juvenile court's analysis of these factors, R.C. 2151.414(D)(1)(a) evaluates the relationship of the child with his or her parents and siblings, and other relevant family and caregivers who "may significantly affect the child[.]" *See* R.C. 2151.414(D)(1)(a). Ms. Rolfes acknowledged Mother's appropriateness and bonding with Z.W. during visits, but her inconsistent visitation pointed in the other direction. At the time of the hearing, Z.W. had lived in the same foster placement since birth and was well bonded to his foster parents. His foster parents wished to adopt him and had already adopted Z.W.'s sibling, who lived in the home and shared a bond with Z.W. Evidence reflected that Z.W. was well-adjusted and meeting of all his developmental milestones. The juvenile court duly observed that Mother's visits went well with Z.W., but ultimately concluded that "[Z.W.'s] interaction with his foster family is more significant than his interaction with his [Mother]."

{¶19} As Z.W. was approximately eight months old at the time of the hearing and could not express his wishes, the juvenile court acknowledged that Z.W.'s guardian ad litem ("GAL") recommended that a grant of permanent custody to HCJFS as in Z.W.'s best interest. *See* R.C. 2151.414(D)(1)(b) ("The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child[.]"). The GAL reiterated concerns about Mother's failure to engage in any services despite HCJFS's efforts and Z.W.'s successful development with his foster family.

{¶20} As to Z.W.'s custodial history, the evidence established that Z.W. resided in the care of HCJFS for his entire life. *See* R.C. 2151.414(D)(1)(c) (requiring the trial court to consider the custodial history of the child in making its best-interest determination). Moreover, during that time Z.W. lived with only one family (which included his sibling) and who planned to adopt him.

{¶21} Under R.C. 2151.414(D)(1)(d) the court examines "[t]he child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to [HCJFS][.]" Here, the juvenile court underscored Mother's overall lack of progress and compliance with services. The juvenile court could not credit Mother's claim that she would complete case plan services even if granted temporary custody. When questioned about her compliance regarding a previously-ordered case plan regarding another of her children, Mother admitted that she did not comply with that plan notwithstanding the court's order. Ultimately, while Mother obtained stable housing and employment, this was only part of the equation for providing a safe and secure home for her child. *See Matter of B.C.*, 12th Dist. Warren Nos. CA2018-03-024 and CA2018-03-027, 2018-Ohio-2673, ¶ 33 (noting that children deserve a "stable, permanent, and healthy, home environment" free from drug use and neglect).

{¶22} Finally, R.C. 2151.414(D)(1)(e) requires the court to consider whether any factor listed in R.C. 2151.414(7) through (11) applies. As already noted, as Mother had her parental rights terminated to her four other children, the magistrate and juvenile court examined (E)(11) and found it satisfied.

III.

**{¶23}** Based on the foregoing, clear and convincing evidence supported the juvenile court's finding that a grant of permanent custody to HCJFS was in Z.W.'s best interest. Therefore, we also find that the decision was not against the manifest weight of the evidence. We accordingly overrule Mother's sole assignment of error and affirm the judgment of the juvenile court.

Judgment affirmed.

**CROUSE** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry this date.